**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION**

IN RE

JAMES B. MILLER AND MARY MILLER                                    CASE NO. 16-50532

DEBTORS

CONNIE OAKS                                                                              PLAINTIFF

V.                                                                                                 ADV. NO. 16-5026

JAMES B. MILLER, JR.                                                                DEFENDANT

**MEMORANDUM OPINION**

The issue before the Court is whether a judgment debt, plus interest, costs and attorney fees, is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). A trial was conducted on November 29, 2016. Upon consideration of the parties' stipulation of facts, testimony and exhibits admitted into evidence, arguments of counsel, and the record, the judgment debt, plus interest and attorney fees incurred in prosecution of this adversary proceeding, are not dischargeable. For reasons stated more fully herein, the remaining attorney fees and costs requested by the Plaintiff are dischargeable.

**I.    FACTS.**

    **A. The Loan Agreement.**

The Defendant Debtor James B. Miller, Jr., is a self-employed contractor and former high school classmate of the Plaintiff Connie Oaks. Prior to the events at issue herein, the Plaintiff was involved in a serious car accident. She filed a lawsuit and received a settlement of $1.3 million in 2009. Shortly thereafter, the Plaintiff hired the Defendant to repair and update her home to better accommodate her physical condition following the accident.

The Plaintiff's husband, David Riggs, referred the Defendant to her. Riggs had previously hired him as a contractor. The Defendant ultimately installed a new roof on, renovated a bathroom in, and put a commode and vanity in, the Plaintiff's home. The Plaintiff and Riggs were satisfied with the finished product.

In the fall of 2009, the Plaintiff hired the Defendant to build a sunroom for her home. At some time during the renovation, the Defendant approached Riggs about a $62,000.00 loan from the Plaintiff. Riggs testified that the Defendant informed him he wanted to expand his business by purchasing a machine to clean shingles and another to manufacture gutters. Riggs informed the Defendant that he would relay the proposal, but the Defendant had to discuss the loan with his wife, as it was "her money."

Riggs passed on the request to the Plaintiff and told her that the Defendant wanted a loan to expand his business. The Plaintiff testified that she needed to talk to the Defendant personally before loaning him any money. This was not the only time someone approached the Plaintiff to borrow money or invest in a business. The Plaintiff testified that she was approached previously by others seeking funds for start-up ventures, but had refused because she did not believe they were good investments.

The Plaintiff and Riggs met with the Defendant in their living room a day or two after the initial discussion. They testified that the Defendant reiterated his intention to expand his business by using the loan proceeds to purchase equipment to clean shingles and make gutters. Riggs was present for most of the discussion, but left periodically to smoke outside. The Defendant offered to repay the proposed loan in full, plus $12,500.00,[1] by May 2010. The Plaintiff testified that she believed the Defendant was a "good Christian man," and it appeared

---

[1] Riggs testified the offered amount was $10,000. The small difference does not change the analysis.

2

his business was growing and prospering, so she agreed.  She did not request collateral to secure the loan for the same reasons.

The Plaintiff drafted the Agreement Regarding Advancement of Funds with Sole Intent to Establish Loan Creating a Creditor/Debtor Relationship dated October 14, 2009, based on a form from the Internet.  [Loan Agreement, Plf. Ex. D at ECF No. 14-4; Def. Ex. 2 at ECF No. 12-2.]  The Loan Agreement indicates the Plaintiff would loan $62,000.00 and the Debtor would "pay in full the $62,000.00 plus an interest of $12,500.00 by May 31, 2010."  [*Id*.]  The Loan Agreement is signed by the Plaintiff and the Defendant.  [*Id.*]

After executing the Loan Agreement and receiving the proceeds on October 15, 2009, the Defendant immediately wrote a check for $24,000.00 to Creative Marketing Solutions to purchase vending machines.  He ultimately spent most or all of the loan proceeds on vending machines instead of using the funds to expand his construction business.  The vending machine business failed within eight months and he disposed of the equipment, which had no value.

The Defendant denies the Plaintiff's version of events.  The Defendant testified he never discussed the purpose of the loan with Riggs, indicating he only referred to an investment.  The Defendant further testified that the Plaintiff and her husband did not ask for, and he did not disclose, his intended use of the proceeds.

The Defendant also denies ever having a special meeting with Riggs and the Plaintiff about the loan.  He testified that the only time the loan was discussed was during the initial meeting with Riggs and when they sought to obtain a notary at Sky Tower Automotive upon execution of the Loan Agreement.  But the Loan Agreement introduced as evidence is not notarized and the Defendant could not explain the discrepancy.

The Plaintiff and her husband testified they did not know the Defendant used the proceeds to purchase vending machines instead of purchasing the equipment discussed.  The Plaintiff said she was generally aware the Defendant was working in his construction business and believed the funds were used as promised.  Riggs later discovered the Defendant had purchased vending machines from the Defendant's employees and the Defendant's son.  The Plaintiff testified she would not have made the loan if she had known the Defendant would use the loan proceeds for something other than expanding his construction business.  Riggs also testified he would have advised his wife to refuse to loan money for vending machines because his prior experience led him to conclude they are a poor investment.

The Defendant did not pay the loan when due.  The Plaintiff and her husband testified they attempted to collect from the Defendant and he initially told them he was "working on it."  The Defendant continued to perform construction work on their home and ultimately offered to offset the money owed for the work performed against the debt.  The Plaintiff and her husband refused because of a dispute about the accuracy of the invoice and the quality of the work.

### B.  The First Bankruptcy.

On August 23, 2011, the Defendant and his wife, Mary Miller, filed a joint chapter 13 bankruptcy petition in the Eastern District of Kentucky, Case No. 11-52395.  The case was dismissed by the Agreed Order of Dismissal for Cause. [Agreed Order of Dismissal, Plf. Ex. J, Case No. 11-52395 at ECF No. 87.]  The Agreed Order was based on grounds stated in the Plaintiff's Motion to Dismiss with Prejudice, which alleged the Defendant and his wife made multiple false oaths on the petition and schedules. [Motion to Dismiss, Plf. Ex. K, Case No. 11-52395 at ECF No. 59.]

### C. The State Court Action.

On April 19, 2012, the Plaintiff sued the Defendant in the Lincoln Circuit Court to recover the amounts owed, plus interest, court costs, attorney fees, and punitive damages. [State Court Complaint, Plf. Ex. A at ECF No. 14-1.] The Defendant failed to respond or otherwise answer the Complaint. [State Court Record, Plf. Ex. E, at ECF No. 14-5.]

On June 22, 2012, the Lincoln Circuit Court held a hearing and entered a partial default judgment against the Defendant and in favor of the Plaintiff. [Partial Default Judgment, Plf. Ex. B at ECF No. 14-2.] The state court adjudged the Defendant in default for failing to file an answer or defense to the allegations and found "the Defendant owes the Plaintiff the principal sum of $62,000.00, plus contract interest of $12,500.00, plus pre-judgment interest on said liquidated sums of eight percent (8%), from May 31, 2010, until the entry of this Partial Default Judgment, said amount totaling $87,315.68 as of June 22, 2012." [*Id.*] The state court further awarded post-judgment interest at the rate of twelve percent (12%). [*Id.*] The state court then found the Defendant in default of the allegations that the Defendant fraudulently procured the loan and negligently performed construction work, but reserved judgment on the amount of damages sustained as a result. [*Id.*]

On July 23, 2012, following an evidentiary hearing on damages, the state court entered a default judgment against the Defendant. [Default Judgment, Plf. Ex. C at ECF No. 14-3.] The state court incorporated the prior Partial Default Judgment, and entered default judgment in favor of the Plaintiff for the sum of $31,129.05 for "the faulty or negligent construction on her home," plus pre-judgment interest at eight percent and post-judgment interest at twelve percent. [*Id.*] The state court also awarded $23,566.41 in attorney fees, plus post-judgment interest at twelve percent. [*Id.*]

5

The state court then found: "Because the Plaintiff has been forced to undergo a lengthy and tortured process to collect her money, including time, effort and attorney's fees to default a fraudulent bankruptcy filed by the Defendant, and because the Defendant fraudulently procured the loan initially, the Court awards the Plaintiff the sum of $10,000.00 in punitive damages for said fraud." [*Id*.] The judgment also allowed twelve percent (12%) post-judgment interest on the punitive damages. [*Id*.]

### D.  The Second Bankruptcy and this Adversary Proceeding.

The Defendant and his wife filed a second joint chapter 13 bankruptcy proceeding on March 23, 2016.  On May 5, 2016, the Plaintiff filed Proof of Claim No. 2 for $135,467.53.  The proof of claim was amended on September 29, 2016, to reflect a total debt of $163,735.97.  [Amended Proof of Claim No. 2-1, Plf. Ex. I, ECF No. 31.]

On June 7, 2016, the Plaintiff filed this adversary proceeding seeking to declare the state court judgment non-dischargeable pursuant to § 523(a)(2)(A).  The Plaintiff moved for summary judgment based on the doctrine of collateral estoppel, but the motion was denied because "the Defendant did not have a full and fair opportunity to litigate the issue of fraud in the state court." [Order Denying Summary Judgment, ECF No. 25 at 1.]  A trial was held on November 29, 2016, and the matter was taken under submission.

### E.  Collection and Damages.

The parties jointly stipulated that the Plaintiff has collected $55,978.02 as of May 17, 2016. [Email Re Collection, Plf. Ex. F at ECF No. 14-6; Def. Ex. 1 at ECF No. 12-1; Joint Stipulation, ECF No. 28 at ¶ 17.]  The evidence further shows the Plaintiff has incurred a total of $98,733.73 in costs and attorney fees to collect the debt, of which $42,637.73 is attributable to legal fees for prosecution of this matter, and $9,587.00 is owed for a storage fee for personal property

6

collected from September 26, 2012, to date. [Accounting, Plf. Ex. G & H, at ECF Nos. 14-7 and 14-8.]

## II. JURISDICTION.

The Court has jurisdiction pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. § 1409.

## III. EVIDENTIARY ISSUES.

The Plaintiff attempted to introduce a criminal indictment for theft by deception into evidence following the Defendant's testimony that he was a truthful person. The Defendant's counsel objected, which was sustained in part. The Plaintiff's counsel was allowed to inquire about the circumstances surrounding the indictment, but could not introduce the contents of the indictment in the record. The Plaintiff asked for permission to supplement the record with a memorandum of law addressing admissibility of the indictment. This request was denied because additional information would not benefit the decision.

Federal Rule of Evidence 608(b) states:

> Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attach or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:
>
> (1) the witness; or
>
> (2) another witness whose character the witness being cross-examined has testified about.

FED. R. EVID. 608(b).

The Plaintiff sought to introduce a criminal indictment, not a criminal conviction. It is not usually permissible to impeach a witnesses' credibility through an indictment not resulting in a

7

conviction. *See U.S. v. Christian*, 786 F.2d 203, 213 (6th Cir. 1986) (*citing U.S. v. Baker*, 494 F.2d 1262, 1266-67 (6th Cir. 1974)). The Plaintiff argued there is contrary authority and other rules of evidence may apply to allow admission. Even accepting those arguments, any probative value of the indictment is substantially outweighed by unfair prejudice to the Defendant. FED. R. EVID. 403. The indictment is nothing more than an accusation and the Plaintiff was not in a position to introduce evidence to support its veracity, which is questionable until proven beyond a reasonable doubt at a trial. Thus, the indictment is not considered in formulating the opinions herein.

IV. **ANALYSIS.**

**A. The Plaintiff Bears the Burden of Proof by a Preponderance of the Evidence.**

"A discharge under section 727. . . of this title does not discharge an individual debtor from any debt- …

>   (2)    for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by
>
>       (A)    false pretenses, a false representation, or actual fraud, other than a statement respecting the debtors or an insider's financial condition...

11 U.S.C. § 523(a)(2)(A).

The Plaintiff must prove the following to succeed by a preponderance of the evidence:

>   (1)    the Defendant obtained money through a material misrepresentation that at the time, the Defendant knew was false or made with gross recklessness as to its truth;
>   (2)    the Defendant intended to deceive the Plaintiff;
>   (3)    the Plaintiff justifiably relied on the false representation; and
>   (4)    the Plaintiff's reliance was the proximate cause of her loss.

*See Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 280-281 (6th Cir. 1998). Exceptions to discharge are strictly construed against the creditor. *Id.* at 281.

8

### B. The Plaintiff Proved the Defendant Knowingly Misrepresented the Purpose of the Loan with Intent to Deceive.

The Plaintiff must prove the Defendant made an express misrepresentation, misleading omission, or committed actual fraud, and did so knowingly or acted with reckless disregard for the truth. *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 759 (Bankr. E.D. Tenn. 2003). "Knowing" means "[h]aving or showing awareness or understanding" and "includes conscious or deliberate acts." *Id.* at 763 (*citing* BLACK'S LAW DICTIONARY 876 (7th ed.1999)).

The Plaintiff must also prove by a preponderance of the evidence that the Defendant intended to defraud her. An intent to defraud a creditor within the scope of section § 523(a)(2)(A) is measured by a subjective standard. *Rembert,* 141 F. 3d. at 281. The debtor's intention, or lack thereof, is ascertained by the totality of the circumstances. *Id.* at 282. The Plaintiff may establish fraud by direct or circumstantial evidence. *See Bluegrass Stockyards of Campbellsville, LLC v. Smith (In re Smith)*, 429 B.R. 864, 870 (Bankr. W.D. Ky. 2010).

Although a close call, the Plaintiff proved the Defendant intentionally made a false representation to her about the purpose of the loan by a preponderance of the evidence. The Defendant denied telling Riggs or the Plaintiff that he intended to use the funds to expand his business or that he had a specific meeting with the Plaintiff regarding the loan. Instead, the Defendant testified he always intended to use the loan proceeds for an investment, but his proposed use of the funds was never discussed. This testimony is not credible and defies logic.

It is more likely than not that the Plaintiff and Riggs met with the Defendant to discuss the purpose of the loan before execution. Riggs testified that the Defendant approached him regarding the loan and both Riggs and the Plaintiff testified that they met the Defendant a day or two later to follow up. Even if the meeting with the Plaintiff was not formally scheduled, it is

9

more likely than not that a discussion about the details of the loan as described by the Plaintiff and Riggs occurred.  The Defendant admitted he was working at the Plaintiff's house often and had conversations with the Plaintiff and her husband while there.

A discussion regarding a significant loan is a logical topic of conversation during one of these meetings, formal or not.  It is also reasonable to believe that an individual asked to loan a large sum of money would naturally want to know the purpose of the loan.  The Plaintiff and Riggs each said the Defendant told them he would use the loan proceeds to purchase equipment to expand his construction business by purchasing equipment to clean shingles and form gutters.

The Defendant claimed that the only discussion regarding the use of the loan proceeds other than the initial meeting with Riggs occurred when the parties went to get the Loan Agreement notarized.  This assertion is also unconvincing.  It is possible a notary might work at a local garage, but that is not a usual place to find such person.  The Debtor then did not explain why notarization of an uncollateralized note was required (it is not required under Kentucky law).  He also did not know why the Loan Agreement was not notarized if that was the intention of the trip to the local garage.

The Defendant countered these problems by suggesting the purpose of the loan was not important to the Plaintiff because she only cared about the high interest rate and quick return.  But the Plaintiff and Riggs asserted that the Defendant proposed the terms and he testified he could not deny this claim.  The Plaintiff and her husband also testified she does not loan money merely because someone requests a loan.  Rather, she vets such requests to determine whether an investment is wise, and she has the ability to understand her own finances based on her prior work experience and time as a single parent.

10

Further, even if the Plaintiff was primarily interested in the high interest rate and quick return, the proposed use of the proceeds would directly impact the likelihood of repayment. There is no use accepting beneficial terms if the borrower cannot repay the loan. The Plaintiff's proof is more credible than the information provided by the Defendant.

The Defendant's credibility is also harmed by his assertion he did not know what investment he would undertake at the time of execution of the Loan Agreement. The Defendant asked for a specific amount of money, $62,000.00. If he was attempting to borrow money for a more general purpose, it is more likely he would have borrowed a less specific amount. Further, the Defendant admitted he wrote a check for $24,000.00 to buy the vending machines the same day he signed the Loan Agreement and received the loan proceeds. He then used most or all of the remaining funds to purchase additional vending machines that became worthless within eight months.

The Plaintiff's attempts to discredit the Defendant with a criminal indictment for theft by deception and the Agreed Order of Dismissal for Cause in his prior bankruptcy are not given weight in this decision. The Plaintiff did not show that either circumstance was relevant to the Defendant's intent when the Loan Agreement was executed. The circumstances of each could have a bearing on the Defendant's overall credibility, but the connection is insufficient to affect the assessment of the Defendant's testimony.

The Plaintiff proved by a preponderance of the evidence that the Defendant intentionally and falsely represented he would use the loan proceeds to expand his business even though he knew he would immediately use the funds to purchase vending machines. The statements and omissions reveal an actual intent to deceive the Plaintiff so she would make the loan.

### C. The Plaintiff Proved She Justifiably Relied on the Defendant's Misrepresentations and Suffered Financial Loss as a Result.

The Plaintiff must also prove that she justifiably relied on the material misrepresentation about the purpose of the loan. *Field v. Mans*, 516 U.S. 59 (1995). "A person is justified in relying on a representation of fact 'although he might have ascertained the falsity of the representation had he made an investigation.'" *Id.* at 70. Justifiable reliance is therefore a matter of the qualities and characteristics of a particular plaintiff and the circumstances of the particular case, rather than application of a community standard. *Id*. at 70-71. Justifiable reliance is not automatic because "a person is 'required to use his senses, and cannot recover if he blindly relies upon a misrepresentation, the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.'" *Id.* at 71 (quoting RESTATEMENT (SECOND) OF TORTS § 541 cmt. a (1976)).

The Plaintiff justifiably relied on the Defendant's representation that he would use the money to expand his business. She testified that she makes her own financial decisions and does not loan money without considering whether the investment is sound. She only agreed to make the loan because she believed the Defendant's business was a good investment. She was satisfied with the Defendant's construction work on her home at the time of the loan and believed his business was thriving according to her observations. She also trusted him.

The Plaintiff's reliance on the Defendant's representation that he would invest the loan proceeds in a longstanding business makes sense. A history of consistent work and profits gives assurance the borrower can repay the debt in a timely manner. A start up venture with no prior history is a riskier investment. The ultimate fate of the vending machines after only eight months underscores this point.

The Plaintiff and Riggs testified that they did not do any independent investigation prior to making the loan. The law does not require an investigation where there is no patent indication that the Defendant would act contrary to his representations. *See, e.g., Michigan v. Green (In re Green)*, 556 B.R. 853, 868 (Bankr. W.D. Mich. 2016) (holding a creditor is not required to make an independent investigation into the truth of every representation); *JGR Assoc., LLC v. Brown (In re Brown)*, 442 B.R. 585, 601 (Bankr. E.D. Mich. 2011) (recognizing an independent investigation is only necessary where the facts should be apparent through a cursory glance or there is discovery of information that suggests deceit). The Defendant's only business at the time the Defendant asked to borrow money was his construction business. By his own admission, he never discussed vending machines or any new ventures with the Plaintiff or Riggs prior to execution of the Loan Agreement. There is no evidence the Plaintiff had a reason to know or suspect the Defendant was dishonest.

It is easy to conclude the Defendant's "conduct was a substantial factor in the loss, or the loss may be reasonably expected to follow." *Williams v. Logan (In re Logan)*, 313 B.R. 745, 749 (Bankr. S.D. Ohio 2004). The Plaintiff suffered a loss of $62,000.00, plus interest, attorney fees, and costs, to collect the debt as a result of the Plaintiff's reliance on the Defendant's misrepresentations. The Plaintiff has met all the required elements by a preponderance of the evidence and thus the debt, in the amount set forth more specifically below, is non-dischargeable.

### D. Only a Portion of the Requested Damages are Non-Dischargeable.

#### 1. The Judgment for the Loan Agreement Debt is Non-Dischargeable.

The prayer for relief in the Adversary Complaint "demands a Judgment against the Defendant determining the Plaintiff's claim as stated herein is excepted from discharge …"

[Adversary Complaint, ECF No. 1.] Paragraph 33 of the Adversary Complaint provides: "The Plaintiff's claim against the Defendant for money the Plaintiff was defrauded by the Defendant into loaning to the Defendant as reduced to the Partial Default Judgment, Exhibit C, and the Default Judgment, Exhibit D, is not dischargeable by the Defendant in his bankruptcy case." [*Id.*] Therefore, the state court's award of contract damages for faulty construction and the punitive damages are not at issue.[2]

For the reasons stated in the preceding section, the state court judgment for principal and interest due and accruing on the Loan Agreement is deemed non-dischargeable.

### 2. A Portion of Attorney Fees and Costs are Non-Dischargeable.

The Plaintiff also seeks "a supplemental judgment to those already entered by the Lincoln Circuit Court for the additional attorney fees and court costs" incurred and to be incurred. [*Id.*] The costs of collection of a non-dischargeable debt are also non-dischargeable when they are allowed by the underlying agreement. *See Cent. Bank & Trust Co. v. Mustafa (In re Mustafa)*, 557 B.R. 533, 541–42 (Bankr. E.D. Ky. 2016) (*citing to Cohen v. de la Cruz*, 523 U.S. 213, 223, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998)); *see also Martin v. Bank of Germantown (In re Martin)*, 761 F.2d 1163, 1168 (6th Cir. 1985) (*citing to Security Mortgage Co. v. Powers*, 278 U.S. 149, 153-54, 49 S.Ct. 84, 85-6, 73 L.Ed. 236 (1928)); *Womack Lumber Co., Inc. v. Guaranty Mortg. Co.* (*In re Bain*), 527 F.2d 681, 685 (6th Cir.1975)).

The Loan Agreement provides that the Defendant is required to pay all attorney fees and costs incurred by the Plaintiff "in an effort to collect the loan." [*Id.*] The Partial Default Judgment determined that it would assign at a later hearing "an appropriate amount of attorney

---

[2] A rough calculation shows any damages related to these claims were paid anyway through prior collection efforts. This conclusion assumes the Plaintiff applied the funds as suggested in paragraph 28 of the Adversary Complaint. [*See* Adversary Complaint, ECF No. 1.]

fees owed the Plaintiff, *as the original contract required them*, the Plaintiff's Complaint asked for them, and the Defendant is in default." [Partial Default Judgment, Plf. Ex. B at ECF No. 14-2 (emphasis supplied).] Therefore, some, but not all, of the attorney fees are non-dischargeable.

### i.   Default Judgment Attorney Fees.

The Default Judgment was entered after an evidentiary hearing on damages. The state court provided: "The Court further finds the Defendant to be in Default Judgment for the sums of $31,129.05, for the faulty or negligent construction on her house (payments to the Defendant and cover contract amounts), and $23,566.41 in attorney's fees." [Default Judgment, Plf. Ex. C at ECF No. 14-3.] The placement of the attorney fee damages immediately after the contract damages suggests the state court imposed attorney fees not just for the collection of the debt related to the Loan Agreement, but also the contract damages for faulty construction. Further, the state court did not address the fraud related to the loan until the next paragraph assessing punitive damages. The punitive damages discussion specifically mentions attorney fees incurred in the "lengthy and tortured process to collect her money" related to the bankruptcy case and other collection efforts. [*Id.*]

Based on this, it is highly unlikely the $23,566.41 in attorney fees assigned by the Default Judgment solely relate to the non-dischargeable loan debt. Even if the punitive damages were declared non-dischargeable, there is no evidence to suggest the contract damages for faulty construction work is a non-dischargeable obligation. Only attorney fees for a non-dischargeable debt are also a non-dischargeable obligation. The record does not include evidence to separate the attorney fees, nor is a court obligated to come up with an allocation method in every case. *Compare Jennen v. Hunter (In re Hunter)*, 771 F.2d 1126, 1129-32 (8th Cir. 1985) (discussing apportionment of payments and ancillary obligations, including attorney's fees, applied to a debt

Case 16-05026-grs    Doc 38    Filed 12/06/16    Entered 12/06/16 14:05:34    Desc Main
                        Document      Page 16 of 17

that was only partially non-dischargeable), *with Gerwer v. Salzman (In re Gerwer)*, 253 B.R. 66, 70-72 (B.A.P. 9th Cir. 2000) (rejecting apportionment remedy based on California law regarding allocation of involuntary payments).

It is fair to hold the Plaintiff accountable because it has the burden of proof and restrictions on dischargeability are strictly construed. Therefore, the attorney fees assessed in the Default Judgment are dischargeable.

### ii.     Post-Default Judgment Attorney Fees.

The Plaintiff provided information on attorney fees and costs incurred to collect the Default Judgment debt after entry and those related to this adversary proceeding. [Accounting, Plf. Ex. G & H, at ECF Nos. 14-7 and 14-8.] Attorney fees and storage costs from 2012 to 2014 total almost $80,000.00 and attorney fees related to prosecution of this adversary proceeding are $42,637.73 as of September 21, 2016. [*Id.*]

The attorney fees to prosecute a § 523(a)(2)(A) action are non-dischargeable because "the contract creating the debt authorizes the fees and is enforceable by state law." *Mustafa*, 557 B.R. at 541. *But see Renfrow v. Draper (In re Draper)*, 232 F.3d 688, 696 (9th Cir. 2000) (rejecting a claim for attorney fees incurred litigating federal law issue of dischargeability). The Sixth Circuit has rejected the narrow approach of *Draper*, and other cases like it, holding:

> In this circuit, an unsecured creditor may recover those costs to which it has a state-law-based right against a solvent debtor, regardless of the nature of the federal proceedings. State law may, of course, require an examination of the nature of the proceedings in federal court, but absent such state law concerns, the federal law of this circuit does not limit contractual awards of attorney fees to situations where the issue of contract enforceability was litigated in bankruptcy court.

*Official Comm. of Unsecured Creditors v. Dow Corning Corp. (In re Dow Corning Corp.)*, 456 F.3d 668, 686 (6th Cir. 2006).

The post-judgment, pre-bankruptcy collection costs might also receive non-dischargeable treatment for the same reason but for two factors that are specific to this case. The Default Judgment addresses multiple obligations, but the prior discussion concluded there is no evidence the contract damages for faulty construction work is non-dischargeable. *See supra* at Section IV.D.2.a. Like the damages for attorney fees in the Default Judgment, the Plaintiff's failure to break out these legal fees between dischargeable and non-dischargeable debt taints the entire damages claim. *Id.*

The Plaintiff also unilaterally directed all collection amounts to debt that this Opinion does not find non-dischargeable. [Adversary Complaint, ECF No. 1 at ¶ 28.[3]] This benefits the Plaintiff because a higher amount is due on the non-dischargeable debt if no collections are allocated. If the Plaintiff's allocation is accepted, the Plaintiff must accept the consequence that none of the related attorney fees are associated with the non-dischargeable debt. Handling the allocation in this manner comports with the strict construction of dischargeability exceptions.

For avoidance of doubt, reasonable additional attorney fees incurred to complete this adversary proceeding from September 21, 2016, are also non-dischargeable.

## V.    CONCLUSION

The foregoing constitutes the Court's findings of fact and conclusions of law. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits, and arguments of counsel, regardless of whether or not they are specifically referred to in this decision. A separate Order shall be entered accordingly.

---

[3] The Defendant's answer admits and denies parts of paragraph 28 of the Complaint, but does not provide further explanation. [Answer, ECF No. 5.] The Joint Stipulations indicate the Defendant agrees $55,978.02 was collected, but nothing more. [Joint Stipulation, ECF No. 28.]

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Gregory R. Schaaf*
**Bankruptcy Judge**
Dated: Tuesday, December 06, 2016
(grs)